**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JEWEL P. U-AHK-VROMAN-SANCHEZ,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | Case No. 19-cv-3141 (APM) |
| ) | |
| UNITED STATES DEPARTMENT OF    ) | |
| DEFENSE,    ) | |
| ) | |
| Defendant.    ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

After serving for over seven years in the U.S. Army and Army Reserve, Plaintiff Jewel P. U-Ahk-Vroman-Sanchez[1] was found unfit to perform her duties as a Food Service Specialist due to disability.   The Army examined her injuries and concluded that they were not severe enough to qualify Plaintiff for medical retirement and its attendant benefits, so she was instead separated with severance pay.   Shortly after her separation, Plaintiff filed a disability claim with the U.S. Department of Veterans Affairs ("VA"), which conducted its own examination and found that she did qualify for medical retirement.   Plaintiff then appealed the Army's decision to the Physical Disability Board of Review (the "Board"), arguing that the VA's assessment was more indicative of her condition at the time of her separation.   The Board disagreed and upheld the Army's decision.

---

[1] Plaintiff's medical and military records sometimes refer to her former names.   Until February 12, 2000, Plaintiff's name was Jewel P. McComie.   Pl.'s Mem. of P. & A. in Supp. of Mot. for Summ. J., ECF No. 13, at 1 n.1.   From February 12, 2000, until May 1, 2015, Plaintiff's name was Jewel P. Greenidge.   *Id.*   Since May 1, 2015, Plaintiff's name has been Jewel P. U-Ahk-Vroman-Sanchez, as indicated in the caption to this case.   *Id.*

Now, Plaintiff challenges the Board's decision as violative of the Administrative Procedure Act.  Before the court are the parties' cross-motions for summary judgment.  For the reasons stated below, the court grants Plaintiff's motion for summary judgment, denies Defendant U.S. Department of Defense's motion for summary judgment, and remands the case to the Board for further consideration consistent with this Memorandum Opinion.

## II.  BACKGROUND

### A.  Statutory and Regulatory Framework

Depending on the severity of their condition, active duty servicemembers found unfit to serve due to a physical disability may be retired or separated.  10 U.S.C. §§ 1201(a), 1203(a).  Under section 1201(a), if a Secretary of a military department determines that "a member . . . is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability . . . the Secretary may retire the member, with retired pay," assuming the Secretary makes certain threshold determinations about the member's disabilities.  *Id*. § 1201(a).  By statute, those determinations include a disability rating of at least 30 percent under the standard schedule for rating disabilities in use by the VA at the time of the determination.  *Id.* § 1201(b)(3).  Members who are retired receive lifetime retirement pay, healthcare, and commissary privileges.  32 C.F.R. § 199.17 (providing TRICARE healthcare for retired servicemembers); DoDI § 1330.17, Enclosure 2, ¶ 3(c)(1) (stating that retired servicemembers "granted retirement pay for physical disability" "are authorized commissary privileges").  For those members whose disability rating is below 30 percent, however, section 1203 provides only that they "may be separated from the member's armed force, with severance pay."  10 U.S.C. §§ 1203(a), (b)(4).

The Army's Disability Evaluation System implements the statutory scheme via Army Regulation 635-40.  *See* Army Reg. 635-40, ¶ 4-1.  At the outset, an Army physician examines

the member to determine whether he or she is qualified to perform his or her duties.  *Id.* ¶ 4-10.

If the examiner concludes that the member is not medically qualified, the member is referred to a

Medical Evaluation Board ("MEB") that makes its own determination whether the member's

conditions meet the retention standards in Army Regulation 40-501.  *See id.* ¶¶ 4-7, 4-10.   If the

MEB determines that the member's conditions do not meet the retention standards, it refers the

member to a Physical Evaluation Board ("PEB").  *Id.* ¶ 4-12.f.   The PEB evaluates the member's

disability and makes findings and recommendations as to the member's fitness and eligibility for

benefits, consistent with any statutory requirements.  *Id.* ¶ 4-19.   The PEB assigns a rating for

each compensable disability based on the VA's Schedule for Rating Disabilities ("VASRD") to

determine if the member qualifies for disability benefits pursuant to either medical retirement or

separation.  *See id.*

The VASRD contains lists of codes that correspond to specific disabilities.   Each code is

linked to a disability rating or range of ratings and includes instructions on determining which

rating applies in a particular case.  *See, e.g.*, 38 C.F.R. § 4.71a (the schedule of ratings for

musculoskeletal disabilities).   Along with these rating schedules, the PEB is also required to

consider other aspects of a member's disability.  *See, e.g.*, *id.* § 4.40 (functional loss is considered

when evaluating a musculoskeletal disability).   Any reasonable doubt as to the rating of a

disability must be resolved in the member's favor.  *Id.* §§ 3.102, 4.3.

As relevant here, any member discharged between September 11, 2001, and December 31,

2009, with a disability rating of 20 percent or less may appeal to the Physical Disability Board of

Review.   10 U.S.C. § 1554a.   Congress created the Board in 2008 to address the disparities in the

disability ratings issued by the military departments in the Department of Defense and the VA.

*See Adams v. United States*, 117 Fed. Cl. 628, 665–70 (2014) (detailing legislative history).

3

When reviewing a PEB decision for which there is a competing VA disability rating, the Board must consider the VA rating, "particularly if the VA rating was awarded within 12 months of the former Service member's separation."   DoDI 6040.44, Enclosure 3, § 4(a)(5)(b).   When "there is a question as to which of the two evaluations shall be applied," the Board must assign the higher rating "if the disability picture more nearly approximates the criteria required for that rating." 38 C.F.R. § 4.7.   Moreover, like the PEB, the Board must resolve any reasonable doubt in favor of the former servicemember.   *Id.* §§ 3.102, 4.3.   Based on its review, the Board recommends to the relevant Secretary whether to change the member's separation to a retirement, increase the disability rating assigned by the PEB, or issue a new disability rating.   10 U.S.C. § 1554a(d).   If the Board recommends any change, the Secretary of the Army (or his designee) may make the correction, but if no such recommendation is made, the Board's decision is final.   10 U.S.C. § 1554a(e).

### B.      Factual Background

#### 1.      *Evaluations and Ratings by the Medical Evaluation Board (MEB) and Physical Evaluation Board (PEB)*

On December 13, 1996, Plaintiff enlisted in the U.S. Army Reserve for a contractual period of eight years.   A.R. at 1645–54.[2]   She served three terms of active duty working as a Food Service Specialist.   A.R. at 34–36.   During her last term, which began on March 6, 2000, Plaintiff experienced several medical issues that led a physician to determine that she did not meet the medical retention standards under Army Regulation 40-501.   *See* A.R. at 1473 (citing shin splints and chronic back, hip, and foot pain).   On February 26, 2003, she was referred to an MEB for further evaluation.   *Id.*

---

[2] The Administrative Record ("A.R.") can be found in the two-volume Joint Appendix filed at ECF Nos. 20-1 and 20-2.

On May 8, 2003, the MEB completed a narrative summary that addressed, among other things, Plaintiff's bilateral shin splints, bilateral foot pain, and right hip pain.[3]   A.R. at 43–50. The narrative summary drew on Plaintiff's military medical records and a November 27, 2002 medical evaluation.   The MEB found that Plaintiff's shin splints began in May 2002, her bilateral foot pain began in March 2001, and her right hip pain arose in April 2001.   A.R. at 43.   The MEB concluded that her bilateral shin splints and hip pain existed prior to her military service, but her bilateral foot pain did not.   *Id*.   It also found that, while her shin splints and hip pain were "permanently aggravated by [her] service," the same was not true for her bilateral foot pain.   *Id*. The MEB's primary diagnosis was shin splints and chronic foot pain, and its secondary diagnosis was right hip pain.   A.R. at 49.   Due to those ailments and others, the MEB concluded that Plaintiff was not fit for continued service and referred her to the PEB for adjudication.   A.R. at 43–44, 50.   On May 16, 2003, Plaintiff appealed the MEB decision.   A.R. at 44, 1198–200. On June 2, 2003, the Acting Deputy Commander, Clinical Services denied the appeal and upheld the MEB's findings and recommendations.   A.R. at 44, 1201.

Upon reviewing the MEB's records, the PEB determined that Plaintiff's chronic bilateral shin splints and bilateral foot pain, along with her mechanical low back pain, rendered her "medically unfit to perform the duties required of a soldier."   A.R. at 52.   The PEB "considered" Plaintiff's right hip pain but found it to be "not unfitting and therefore not ratable."   *Id.*   An unfitting condition can render a servicemember unfit for service.   Plaintiff was assigned a 10 percent rating for her mechanical low back pain and a zero percent rating for her bilateral shin splints.   *Id.*   Consistent with the MEB, the PEB concluded that Plaintiff's bilateral foot pain was

---

[3] Although Plaintiff suffered from multiple medical conditions, the court focuses on those conditions that are the subject of her appeal.

the result of "normal progression without permanent service aggravation," so it declined to provide a rating.  *Id.*   In sum, the PEB recommended a combined disability rating of 10 percent and that Plaintiff be "separat[ed] with severance pay if otherwise qualified."  A.R. at 53.   On December 22, 2003, the Army honorably discharged Plaintiff due to a medical disability.   A.R. at 5.

### 2.   *Evaluation and Ratings by the VA*

On December 31, 2003, Plaintiff filed a disability claim with the VA.  A.R. at 56.   As part of her claim, she underwent a physical examination in early July 2004.  A.R. at 12.   Based on her medical service records and the results of the VA exam—and applying the same VASRD criteria as the PEB—the VA assigned Plaintiff a 100 percent combined disability rating, accounting for all her injuries.   A.R. at 11.

For her bilateral shin splints, the VA "assigned a 10 percent evaluation because the VA examination show[ed] objective evidence of tenderness to deep palpitation over [Plaintiff's] bilateral shins and subjective complaints of inability to walk more than 25 minutes or stand more than 15 minutes."  A.R. at 61.   For her bilateral foot pain, the VA assigned a 10 percent evaluation to each foot because the VA exam showed "objective evidence of tender plantar aspects of the feet" and X-rays demonstrated "pes planus" (i.e., flat feet).  A.R. at 62.   The VA also noted subjective complaints of "swelling and sharp pain into the plantar aspects of the feet which then [went] to the lateral aspect of the heel and up to [the] back of the calf."  *Id*.   And for Plaintiff's right hip pain, the VA assigned a 10 percent evaluation because her service medical records "show[ed] MRI evidence of degenerative joint disease of [her] right hip, and the VA examination show[ed] constant pain with throbbing."  *Id.*   The VA could not evaluate the range of motion in Plaintiff's right hip because it caused her too much pain.   *Id.*

The following chart summarizes the differences between the VA and PEB ratings for the relevant conditions:

| Condition | PEB Rating & VASRD Code | VA Rating & VASRD Code |
|---|---|---|
| Bilateral Shin Splints | 0% – DC 5022 | 10% – DC 5022 |
| Bilateral Foot Pain | | |
|    a.  Right Foot Pain | No Rating (condition existed prior to service) | 10% – DC 5280 |
|    b.  Left Foot Pain | No Rating (condition existed prior to service) | 10% – DC 5284 |
| Right Hip Pain | No Rating (not unfitting) | 10% – DC 5252 |
| *Combined Disability Rating* | **10% (for mechanical low back pain)** | **100% (inclusive of other separately rated conditions)** |

### 3.   Review by the Physical Disability Board of Review (the "Board")

On February 12, 2016, Plaintiff filed an application with the Board, seeking an increase in the combined disability rating assigned by the Army to at least 30 percent, the threshold for medical retirement benefits.   *See* A.R. at 20–31; 10 U.S.C. § 1201(a).   In relevant part, the Board recommended an upward adjustment for Plaintiff's right foot pain from 0% to 10% but rejected Plaintiff's arguments as to her bilateral shin splints, left foot pain, and right hip pain.   A.R. at 13–16.   The Board's combined disability rating of 20 percent still left Plaintiff short of full medical retirement benefits.

Addressing Plaintiff's bilateral shin splints, the Board first acknowledged that the MEB's narrative summary "noted complaints of 'chronic bilateral shin pain.'"   A.R. at 13.   X-rays from May 2002 "showed stress reactive bond changes at the mid-third segments of both tibial shafts," but a December 2002 bone scan showed "no abnormalities in either leg."   *Id.*   The Board then referenced the results of the July 2004 VA exam, noting that Plaintiff had reported the inability to walk "more than 25–30 minutes or stand more than 15 minutes due to shin pain" and that the

examination showed "slight tenderness to deep palpitation over the bilateral shins." *Id.*   The Board found that Plaintiff's "treatment records were silent [as to shin splints] beyond September 2002." A.R. at 14.   "Pain on motion was not documented at the [MEB's narrative summary] or [VA exam], and a compensable [range of motion] was not recorded at either examination." *Id.* "After due deliberation . . . the [Board] concluded that there was insufficient cause to recommend a change in the PEB adjudication for the bilateral shin splints condition." *Id.*

As for Plaintiff's bilateral foot pain, the Board determined that Plaintiff's service treatment record "consistently documented that [her] [foot] problems began in 2001," *after* she began her service.   A.R. at 15.   It also found that "[t]here was no documentation that [her foot pain] existed prior to service other than the [MEB's narrative summary]." *Id.*   Thus, the Board concluded that the PEB erred in finding that Plaintiff's condition existed prior to service. *Id.*   After recognizing that the VA rated each foot separately at 10%, the Board went on to recommend a 10 percent disability rating for Plaintiff's right foot but a zero percent rating for her left foot.   A.R. at 14–16. For Plaintiff's left foot, the Board stated that "[t]he last treatment entry related to the left foot was dated 17 months prior to separation" (i.e., August 2002) and that there was no compensable presence of limitation of motion or degenerative arthritis.   A.R. at 15.

As for Plaintiff's right hip pain, the Board summarily affirmed the PEB's view that the injury was not unfitting.   A.R. at 16.   In support, the Board stated only that "[t]he contended condition was not profiled or implicated in [Plaintiff's] commander's statement" regarding her fitness and that "[t]here was no performance-based evidence from the record that [Plaintiff's right hip pain] significantly interfered with satisfactory duty performance." *Id*.

Ultimately, the Board recommended a combined disability rating of 20 percent and did not recommend any changes to Plaintiff's retirement status.   *Id.*   On September 13, 2017, the Deputy Assistant Secretary of the Army adopted the Board's recommendations.   A.R. at 6.

### C.     Procedural History

On October 21, 2019, Plaintiff filed her Complaint in this court, contending that the Board's decision violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* Compl., ECF No. 1 [hereinafter Compl.].   Specifically, she challenges the Board's analysis and conclusions regarding her bilateral shin splints, left foot pain, and right hip pain.   *Id.* at 2. Before the court are the parties' cross-motions for summary judgment.   *See* Pl.'s Mem. of P. & A. in Supp. of Mot. for Summ. J., ECF No. 13 [hereinafter Pl.'s Mot.]; Def.'s Mem. of Law in Supp. of Cross-Mot. for Summ. J., ECF No. 14 [hereinafter Def.'s Cross-Mot.].

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   But in a case involving review of a final agency action, the Rule 56 standard does not apply, because of the limited role of the court in reviewing the administrative record.   *See AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 81 (D.D.C. 2007).   Instead, the court's role in an APA action "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."   *Charter Operations of Alaska v. Blank*, 844 F. Supp. 2d 122, 127 (D.D.C. 2012) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)).   Summary judgment "serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review."   *Id.*

Under the APA, courts must set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2). "The scope of review under this standard is narrow," and a court "is not to substitute its judgment for that of the agency." *Judulang v. Holder*, 565 U.S. 42, 52–53 (2011) (cleaned up).

Courts apply the "arbitrary and capricious" standard to "ensur[e] that agencies have engaged in reasoned decisionmaking." *Id.* at 53. The agency must "examine[] the relevant data and articulate[] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Stewart v. Sackley*, 251 F. Supp. 3d 138, 156 (D.D.C. 2017) (cleaned up); *see also Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017) (an agency acts arbitrarily and capriciously when it "fail[s] to reasonably reflect upon the information contained in the record and grapple with contrary evidence"). "[C]onclusory statements will not do; an agency's statement must be one of *reasoning*." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (cleaned up); *see also Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("[T]he agency must explain why it decided to act as it did."). "This does not mean that an agency's decision must be a model of analytic precision to survive a challenge." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995). "A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id.* (quoting *Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974)).

Courts must also set aside an agency action if it is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). Under that standard, "a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (cleaned up). "[E]vidence that

10

is substantial viewed in isolation may become insubstantial when contradictory evidence is taken into account."  *Landry v. FDIC*, 204 F.3d 1125, 1140 (D.C. Cir. 2000).   "Therefore, an agency cannot ignore evidence that undercuts its judgment; and it may not minimize such evidence without adequate explanation."  *Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018).

Here, Defendant argues that the Board's decision must be reviewed under an "unusually deferential application" of APA review reserved for "decisions of military record correction boards."   Def.'s Cross-Mot. at 14 (citing *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)). But neither *Cone* nor the case it quotes—*Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)—involved an appeal from a Physical Disability Board of Review decision.   *See Cone*, 223 F.3d at 792 (addressing an appeal from an Army Board for Correction of Military Records decision); *Kreis*, 866 F.2d at 1509 (appeal from the Air Force Board for the Correction of Military Records).   The greater deference afforded in *Cone* and *Kreis* turned on the permissive language of the controlling statute, 10 U.S.C. § 1552(a), which allows a Secretary of a military department to correct a military record "when the Secretary considers it necessary to correct an error or remove an injustice."   10 U.S.C. § 1552(a)(1).   The court in *Kreis* observed that it is "simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* to correct an error or remove an injustice.'"   866 F.2d at 1514–15 (quoting 10 U.S.C. § 1552(a)); *see also Cone*, 223 F.3d at 792–93.

The statute that governs the Board in this case, 10 U.S.C. § 1554a, does not exude deference to the same degree.   It simply provides that the Board "may . . . recommend" a recharacterization of separation, modification of disability rating, or a new disability rating, and the Secretary "may correct the military records of a covered individual in accordance with a recommendation made by the [Board]."   *See* 10 U.S.C. §§ 1554a(d), (e).   Additionally, in *Cone*,

the court noted that the "deferential standard [under section 1552(a)] is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone*, 223 F.3d at 793 (citing *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)).   Here, in sharp contrast, Congress established the Board specifically to address disparities in disability ratings between the armed forces and the VA during a discrete period of time (September 11, 2001, through December 31, 2009).   *See Adams*, 117 Fed. Cl. at 665–70.   Concerns over interference with military affairs, therefore, are not present here to the same degree.   Accordingly, consistent with the only other case in this jurisdiction to resolve an APA challenge to a Board decision, the court holds that the baseline APA standard of review applies in this matter.   *See White v. Mattis*, No. 18-02867 (ESH), 2019 WL 6728448, at *4 (D.D.C. Dec. 11, 2019).

## IV.   DISCUSSION

Plaintiff challenges the Board's decision not to modify her disability rating as to three conditions:   shin splints, left foot pain, and right hip pain.   Plaintiff offers numerous arguments in support of her view that the Board's decision as to all three conditions was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.   *See* Pl.'s Mot.   But because the court ultimately agrees that the Board's decision-making falls short of the APA's requirements and thus remands the matter back to the Board, the following discussion addresses only the most pertinent of Plaintiff's arguments.

### A.   The Board's Treatment of the VA's Disability Ratings and Rationale

At minimum, the Board's decision was arbitrary and capricious because it failed to "grapple with [the] contrary evidence" and reasoning underlying the VA's higher disability ratings. *See Fred Meyer Stores*, 865 F.3d at 638.   This failure cuts across all three challenged ratings.

Using the VASRD, both the Board and the VA coded Plaintiff's bilateral shin splints under DC 5022.  *See* A.R. at 11, 16.  The schedule of ratings under 38 C.F.R. § 4.71a states that "diseases under diagnostic codes 5013 through 5024 [including 5022] will be rated on limitation of motion of affected parts, as arthritis, degenerative."  38 C.F.R. § 4.71a.  "Arthritis, degenerative" corresponds to DC 5003, which in turn states that, for a 10 percent rating, limitation of motion must be confirmed "by findings such as swelling, muscle spasm, or *satisfactory evidence of painful motion*."  *Id.* (emphasis added).  The VA appeared to rely on such findings in its rating decision.  It assigned a 10 percent evaluation "because the VA examination show[ed] objective evidence of tenderness to deep palpitation over [Plaintiff's] bilateral shins and subjective complaints of inability to walk more than 25 minutes or stand more than 15 minutes."  A.R. at 61.  The Board reiterated the VA's findings and declined to adopt the VA's rating, but it provided no analysis supporting its rejection of the VA's approach.  *See* A.R. at 13–14.  In other words, despite referencing contrary evidence suggesting abnormalities with Plaintiff's shins, the Board did not explain in any detail why the VA's evidence was not "satisfactory evidence of painful motion" and thus was insufficient for a 10 percent disability rating.  *See id.*  Simply stating that the Board came to its decision "[a]fter due deliberation" and "considering all of the evidence," A.R. at 14, does not comport with the APA's requirement of reasoned decision-making.  *See Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017) (agency is obligated "to *examine* all relevant factors and record evidence" (emphasis added)).

The Board's treatment of Plaintiff's left foot pain suffers from the same defect.  The VA rated her left foot pain at 10 percent under DC 5284 because "the VA examination show[ed] objective evidence of tender plantar aspects of the [foot]" and "X-rays show[ed] [flat feet]."  A.R. at 62.  The VA also documented "subjective complaints [of] swelling and sharp pain into

the plantar aspects of the [foot]," extending to "the lateral aspect of the heel and up to [the] back of the calf."   *Id.*   DC 5284 mandates a disability rating of 10 percent for "moderate" foot injuries. 38 C.F.R. § 4.71a.   The Board acknowledged the VA's coding and rating for Plaintiff's left foot pain, but it failed to consider whether that code might apply in its own analysis, let alone explain why it ultimately disagreed with the VA's assessment.   A.R. at 14–15 (considering a rating under DC 5003 and DC 5276 but not DC 5284).   Defendant's briefing offers no explanation for this deficiency.   *See* Def.'s Cross-Mot. at 20–22; Def.'s Reply in Supp. of Cross-Mot., ECF No. 19 [hereinafter Def.'s Reply], at 10–11.   Defendant notes, for instance, that the VA examiner found a "mild deformity" of the right first metatarsal head but not the left.   *See* Def.'s Cross-Mot. at 21; Def.'s Reply at 10.   But that explains only why the Board properly rated Plaintiff's right foot pain at 10 percent under DC 5280, not why it declined to consider whether her left foot pain qualified as a moderate foot injury under DC 5284.

As for Plaintiff's right hip pain, the Board outright failed to even acknowledge the VA's reasons for its disability rating.   *See* A.R. at 16.   The VA assigned a 10 percent evaluation under DC 5252 because "[Plaintiff's] service medical treatment records show[ed] MRI evidence of degenerative joint disease of [her] right hip, and the VA examination show[ed] constant pain with throbbing."   A.R. at 62.   The Board grappled with neither of these contrary findings, and Defendant's briefing declines to address the VA's rating on Plaintiff's right hip altogether.   *See* A.R. at 16; Def.'s Cross-Mot. at 22–23; Def.'s Reply at 11–13.   As a result, the Board's determination must be set aside as arbitrary and capricious.   *See Fred Meyer Stores*, 865 F.3d at 638.

The Board's cursory treatment of the VA's ratings across all three challenged conditions also renders its decision "not in accordance with law."  5 U.S.C. § 706(2)(A).  Department of Defense Instruction 6040.44, Enclosure 3, § 4(a)(5) states:

> The Military Department concerned will obtain VA rating determinations issued on behalf of the former Service member.  Once obtained, the [Board] will:
>
> > (a) Compare any VA disability rating for the specifically military-unfitting condition(s) with the PEB combined disability rating; and
> >
> > (b) Consider any variance in its deliberations and any impact on the final PEB combined disability rating, particularly if the VA rating was awarded within 12 months of the former Service member's separation.

DoDI 6040.44, Enclosure 3, § 4(a)(5).  Although the Board seems to have complied with its obligation under the first subsection, *see* A.R. at 11 (documenting ratings comparison), it failed to meaningfully "consider" the variance between the VA and PEB ratings in its "deliberations," even though it was "particularly" required to do so because the VA issued its ratings on August 30, 2004, roughly eight months after Plaintiff's December 22, 2003 separation date, *see* A.R. at 57. Defendant counters that the Board "summarized its analysis for each condition where it assessed and weighed the competing (conflicting) evidence, applied the proper legal and regulatory authorities, and articulated its conclusion."  Def.'s Reply at 17.  Not so.  As discussed above, although the Board referenced the VA's findings and conclusions (at least with respect to Plaintiff's bilateral shin splints and left foot pain), it did not adequately "consider" that competing evidence "in its deliberations."  *See supra* pp. 12–14.  To "consider" something requires one "to think about [it] carefully" or "to take [it] into account."  *Consider*, MERRIAM-WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/consider (last visited Feb. 4, 2021). "Deliberation," as relevant here, means "a discussion and consideration by a group of persons . . .

of the reasons for and against a measure." *Deliberation*, MERRIAM-WEBSTER'S DICTIONARY,

https://www.merriam-webster.com/dictionary/deliberations (last visited Feb. 4, 2021).  So the

Board's task was not merely to acknowledge the VA's ratings, but to evaluate and weigh them

and, if the Board ultimately disagreed with them, to say why.   Because the Board's decision lacks

such analysis, the Board did not properly "consider" the variance in the VA and PEB ratings "in

its deliberations"—a violation of DoDI 6040.44.   Thus, its decision was not in accordance with

law.

###### B.      The Board's Discussion of Plaintiff's Right Hip Pain

VA disability ratings aside, the Board's treatment of Plaintiff's right hip pain violates the

APA for other reasons.   In affirming the PEB's determination that Plaintiff's condition was not

unfitting, the Board stated only that the condition "was not profiled or implicated in [Plaintiff's]

commander's statement" regarding her fitness and that "[t]here was no performance-based

evidence from the record that [Plaintiff's right hip pain] significantly interfered with satisfactory

duty performance."  A.R. at 16.   After reviewing the record, however, the court finds neither

assertion to be correct.

The second and third paragraphs of Plaintiff's commander's statement indicate that

Plaintiff's "right hip pain" contributed to her permanent physical profile and resulted in "limit[ing]

her ability to perform the duties required of her [job]."   *See* A.R. at 1329 (quoting Plaintiff's

primary care physician's memorandum, which in turn addresses Plaintiff's hip pain, *see* A.R. at

83).   Her commander noted that she "has not performed duties within her [job description] in all

the time she has been in my command *due to her injuries*," A.R. at 1330 (emphasis added),

suggesting a cause inclusive of Plaintiff's right hip pain.   Defendant's briefing offers no

16

substantive response to this record evidence.  *See* Def.'s Cross-Mot. at 22–23, 27–28; Def.'s Reply at 11–13, 15–16.

Moreover, the record does contain evidence that Plaintiff's right hip pain "interfered with satisfactory duty performance," A.R. at 16.  The MEB found that a "combination of pain" in "multiple musculoskeletal areas including her . . . right hip" "interfere[d] with her ability to perform the duties required by her [job]."  A.R. at 50.  The MEB concluded that Plaintiff "fail[ed] to meet retention criteria" because of, among other conditions, her "hip pain."  *Id.*  As Plaintiff notes, the record also includes "evidence of plain film examinations in April and August of 2002 that revealed degenerative joint disease . . . of the right hip, with calcific tendonitis affecting the acetabular rim [i.e., the area around the hip socket]."  Pl.'s Mot. at 21 (citing A.R. at 84, 87). Defendant again offers no response to this evidence.  *See* Def.'s Cross-Mot. at 22–23, 27–28; Def.'s Reply at 11–13, 15–16.

In sum, the Board's failure to engage with or even acknowledge the evidence in the record that supports the view that Plaintiff's right hip pain is unfitting renders its decision arbitrary and capricious and unsupported by substantial evidence.  *Fred Meyer Stores*, 865 F.3d at 638 (an agency must "reasonably reflect upon the information contained in the record and grapple with contrary evidence"); *Genuine Parts*, 890 F.3d at 312 (to satisfy the substantial evidence standard, "an agency cannot ignore evidence that undercuts its judgment; and it may not minimize such evidence without adequate explanation").

## C.    Plaintiff's Physical Profiles

Lastly, Plaintiff's many references to her Physical Profiles raise issues that would benefit from further development before the Board.  Throughout her briefing, Plaintiff argues that the Board erred in not considering or giving the proper weight to several Physical Profiles in the record

that appear to diagnose her various medical conditions and limit her physical activity accordingly. *See, e.g.*, Pl.'s Mot at 19–20 (referencing Physical Profiles dated November 5, 2002; November 20, 2002; February 27, 2003; and March 12, 2003, in support of moderate left foot pain); *id.* at 21 (referencing several Physical Profiles in support of right hip pain); *id.* at 24 (same in support of bilateral shin splints).   Yet in its responsive briefing, Defendant does not address them.   *See* Def.'s Cross-Mot.; Def.'s Reply.   Nor did the Board address them in its "deliberations."   These records raise several questions the court is unable to answer on the present record.   For example, why are Physical Profiles created and what type of medical evaluation is performed in preparing them?   Are Physical Profiles that limit a servicemember's activities sufficient to establish painful motion such that Plaintiff is entitled to "at least the minimum compensable rating" for one or more of her challenged conditions?   *See* Pl.'s Mot. at 29–31 (citing 38 C.F.R. § 4.59).   Are the attendant evaluations as reliable as Plaintiff's VA exam or the medical evaluation referenced by the MEB?   Although the court need not address such issues today, on remand the Board should take Plaintiff's Physical Profiles into account and make further findings explaining how those records affect her claim for medical retirement.

## V.    CONCLUSION

For the reasons stated above, the court grants Plaintiff's motion for summary judgment, denies Defendant's motion for summary judgment, and remands the case to the Board for further consideration consistent with this Memorandum Opinion.   At this time, the court does not opine on the Board's ultimate conclusions regarding Plaintiff's eligibility for medical retirement.   It holds only that the Board's process in reaching that decision falls short of the APA's requirements. On remand, the Board is directed to review the administrative record and explain its decision in a manner that grapples with contrary evidence and permits the court to better follow its reasoning.

The Board should also consider all relevant VASRD provisions and Department of Defense Instructions and apply them, as appropriate.

Dated:   February 4, 2021

Amit P. Mehta
United States District Court Judge